ORIGINAL

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| United States of America<br>v.<br>Stephen William Beal | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  SA 18-257 M |
| _____<br>*Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 15, 2018_____ in the county of _____Orange_____ in the

___Central___ District of ___California___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of Unregistered Destructive Device |

LODGED

2018 MAY 17 PM 2:35
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
SANTA ANA
BY _____

FILED-SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAY 17 2018

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

This criminal complaint is based on these facts:

Please see attached affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Evan Jesch, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___5/17/18___

_____
*Judge's signature*

City and state: _____Santa Ana, California_____

Hon. Karen E. Scott, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Mark Takla

# AFFIDAVIT

I, Evan Jesch, being duly sworn, declare and state as follows:

## I.      **INTRODUCTION**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been an FBI Special Agent since 2016. I am currently assigned to the Los Angeles Field Office, Orange County Resident Agency. As a member of the Joint Terrorism Task Force ("JTTF"), my duties include, but are not limited to, investigating crimes related to domestic terrorism. Prior to joining the JTTF, I investigated crimes involving health care fraud, public corruption, bank robbery, child exploitation, and international kidnapping. I have received both formal and informal training from the FBI and other institutions regarding investigative techniques including interviewing subjects, search and arrest warrants, wiretaps, and pen registers. I am familiar with related laws, the interpretation and application of federal laws and federal court procedures, and have previously assisted in the execution of numerous federal search and arrest warrants.

2.      This affidavit is made in support of a criminal complaint against, and arrest warrant for, Stephen William BEAL ("BEAL") for a violation of 26 U.S.C. § 5861(d) (Possession of Unregistered Destructive Device) (the "Subject Offense").

3.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, and all dates set forth below are on or about the dates indicated.

## II.   SUMMARY OF INVESTIGATION

4.    The FBI is investigating the May 15, 2018, explosion at 11 Mareblu,
Aliso Viejo, California that killed one person, Ildiko Krajnyak ("Krajnyak"), and
injured two more as a possible targeted attack.   Evidence collected from the blast
site suggests that the explosive incident was intentional and was not caused by an
accident, though the exact means by which the explosive incident was carried out
has not yet been determined.   Two completed improvised explosive devices
("IEDs") and three firearms were recovered from a search of the Long Beach
residence of Krajnyak's ex-boyfriend, BEAL, as well as precursor chemicals,
energetic materials, e-matches, variously sized cardboard and modified rocket
tubes – all known to be chemical precursors and component parts of IEDs.

## III.   LEGAL BACKGROUND

5.    Based on my training and consultations with the United States Code, I
know the following:

a.    The relevant text of 26 U.S.C § 5861(d) is:

[I]t shall be unlawful for any person to receive or possess a firearm
which is not registered to him in the National Firearms Registration
and Transfer Record.

26 U.S.C. § 5861(d).

b.    Pursuant to 26 U.S.C. § 5845(a)(8), the term "firearm" is
defined to include "a destructive device."   A destructive device, as defined in 26
U.S.C. § 5845(f)(1), includes "(1) any explosive [or] incendiary . . . (A) bomb, (B)
grenade, (C) rocket having a propellent [*sic*] charge of more than four ounces, (D)
missile having an explosive or incendiary charge of more than one-quarter ounce,
(E) mine, or (F) similar device; . . . and (3) any combination of parts either
designed or intended for use in converting any device into a destructive device as
defined in subparagraphs (1) and (2) and from which a destructive device may be
readily assembled."

## IV.   STATEMENT OF PROBABLE CAUSE

**A.    A May 15, 2018 Explosion in Aliso Viejo, California Killed Krajnyak and Injured Two Others**

6.      Based on my communications with Orange County Sheriff's Department ("OCSD") deputies, and FBI and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Special Agents, I learned the following:

a.      On May 15, 2018, at approximately 1:08 p.m., OCSD deputies responded to an explosion at the business complex located at 11 Mareblu, Aliso Viejo, in Orange County, California (the "Mareblu Building"). OCSD deputies observed smoke and fire coming from the first floor of the Mareblu Building and broken window glass and debris in the parking lot. OCSD deputies evacuated the immediate area.

b.      Orange County Fire Authority ("OCFA") and OCSD Bomb Squad personnel entered the building and discovered human remains outside of a broken window and in the parking lot of an adjacent building. The human remains were later identified as belonging to Krajnyak, who died in the explosion. OCFA located two women who were injured, but alive, in a day spa called Magyar Kozmetica (the "Spa"), in suite 110A of the Mareblu Building. The Spa appeared to be the location of the explosion. The injured women, Victim 2 and her mother, Victim 3, were later identified as patrons of the Spa, which Krajnyak owned with BEAL and which Krajnyak operated.

c.      OCSD and FBI Evidence Response Teams ("ERT") and bomb technicians responded to the scene and entered the Mareblu Building. After clearing the building for secondary explosive devices, law enforcement personnel located the blast seet, or origin, of the explosion inside Suite 110A, near the front counter of the Spa. Law enforcement personnel observed significant damage to the building's interior and exterior, consistent with an explosive incident. Suite

3

110A's ceiling was blown open and the floor of the unit above Suite 110A was buckled. The glass from the unit's windows was blown into the parking lot.

       d.     Near the location believed to be the blast seat, ERT recovered a nine-volt battery, a cellular telephone, melted material that appeared to be duct tape, and loose wires. All of these items were heavily damaged, which is consistent with an explosive incident.

      7.     Following the explosion, OCSD deputies spoke with Victim 2 and Victim 3 at local hospital where they were being treated for their injuries, specifically, burns and lacerations consistent with an explosive incident. I have reviewed the reports of these interviews and learned the following:

       a.     Victim 2 and Victim 3 stated that they had previously visited the Spa and received treatments from Krajnyak. All three women are ethnically Hungarian. Victim2 and Victim 3 went to the Spa for spa treatments on May 15, 2018. The three women were the only people at the Spa that morning.

       b.     Following their spa treatments, as Victim 2 and Victim 3 approached the front counter to pay, Victim 2 noticed lots of mail piled up along with three to four brown cardboard boxes on the floor next to the counter. Victim 2 observed Krajnyak pick up one of the boxes, place it on the counter, and open it with a tool.

       c.     As soon as Krajnyak opened the box, Victim 2 stated that the box exploded and recalled being blown backwards by the explosion onto the floor. She also saw flames and smoke. Victim 3, who did not observe Krajnyak open the package, stated that she was getting a glass of water when she felt and heard an explosion and was knocked to the ground. Victim 3 described seeing "everything on fire." Following the explosion, Victim 2 and Victim 3 exited the building and waited for help to arrive. Victim 2 did not see what happened to Krajnyak.

**B.      Identification and Interviews of BEAL**

8.      Based on my communication with FBI SAs Chris Denning and Matt Jaremenko and FBI TFO from the Anaheim Police Department Rob Warren, I learned the following:

a.      BEAL's current girlfriend, Witness 1, saw the news report of the explosion and advised him to contact the phone number for the OCSD because she knew that he leased space at the Mareblu Building and that Krajnyak was BEAL's ex-girlfriend and business partner.

b.      BEAL and Witness 1 told the FBI that BEAL contacted the OCSD at approximately 3:30 p.m.  OCSD went to his residence on East El Paseo in Long Beach in Los Angeles County ("BEAL's Residence").  BEAL consented to a search of BEAL's Residence.  In BEAL's multi-room pool-house/garage, OCSD Bomb Technician Deputy K. Stedman and FBI Task Force Bomb Technician J. Hickey observed an approximately seven-foot tall rocket, rocket-making equipment, two containers of potassium perchlorate (a precursor)[1], two containers of red gum (used as a fuel and binder in fireworks), and at least three containers of black powder.  In total, in a subsequent search pursuant to a state search warrant, approximately 130 pounds of explosives/precursors were found in BEAL's Residence (approximately 80 pounds of which was found in the garage).

c.      BEAL spoke to FBI SAs Denning and Jaramenko and stated the following:

i.      BEAL was contacted by Witness 1 about the explosion and tuned into the news, where he confirmed that there was an explosion at the Mareblu Building.

---

[1] According to FBI Special Agent Bomb Technician Greg Rabinovitz, potassium perchlorate is a strong and common oxidizer commonly used in the manufacture of pyrotechnic powders (commonly known as flash powders) both commercially manufactured and improvised.

5

ii.     Krajnyak is BEAL's ex-girlfriend.  BEAL met Krajnyak approximately a year and a half ago.  They began dating and soon thereafter opened a business together, the Spa, which was originally located in a different location than the Mareblu Building.  Within the last couple of months, the Spa relocated to the Mareblu Building.

iii.    At some point, BEAL's and Krajnyak's relationship began to cool due to disputes over the exclusivity of the relationship and financial issues.  By February or March 2018, their romantic relationship ended although they remained business partners.

iv.     BEAL paid the rent for their business (approximately $1,500 per month at the Mareblu Building location) and half of the Spa's operating costs.  Some months he would have to loan Krajnyak money to cover all of the costs; other months, she made enough to cover the costs.

v.      BEAL said that the items that the bomb technicians saw in his pool house/garage belonged to him.  He is a model rocket hobbyist, but has not pursued the hobby since 2004.  He had set a goal of building a rocket that could attain Mach II speed, and once he achieved that goal he no longer wanted to pursue the hobby.  Since 2004, he has not touched the rocket-making equipment and chemicals in his pool house/garage, where they were stored.

vi.     BEAL ordered the precursors and accelerants in his pool house/garage from the Internet between the late 1990s and 2004.  From the late 1990s until September 11, 2001, he also made fireworks, including mortars.  He stopped making fireworks after September 11, 2001, because he did not want to give the wrong impression.

vii.    BEAL learned how to build advanced rockets from a partner with whom he built rockets until 2004.

6

viii.    BEAL said he saw media coverage of the explosion and claimed he did not have material to create an explosion that large.

9.    Based on my review of the State Search Warrant (defined below), I learned that on May 15, 2018, BEAL was interviewed by OCSD Investigator J. Pelayo.  BEAL stated the following:

a.    He and Krajnyak met through an online dating application. They started dating on or about June 19, 2016 and dated for approximately 1.5 years.

b.    During their relationship, they also became business partners and BEAL is Krajnyak's business manager.  BEAL currently leases the office space in the Mareblu Building for the Spa, which has been at this location for approximately six to nine months.  The lease is under BEAL's name because Krajnyak previously filed for bankruptcy.

c.    Krajnyak and BEAL also have another business called 888 Unlimited, which sells cosmetic products.

**C.    Execution of Search Warrants**

10.    On May 16, 2018, the Honorable Glenn Salter, Judge for the Superior Court of California, County of Orange, approved search warrants for the following locations[2] (the "State Search Warrant"):

a.    All of the office suites on the first and second floors of the Mareblu Building, including the Spa;

b.     Krajnyak's white Lexus sedan, which was parked at the Mareblu Building;

c.    Krajnyak's residence on Drover Court in Trabuco Canyon in Orange County;

---

[2] The State Search Warrant also authorized the search and seizure of a white iPhone found in the Spa a few feet away from the blast site and Krajnyak's personal and business Facebook accounts.

    d.      BEAL's Residence; and

    e.      BEAL's silver Toyota Prius, which was parked in the driveway of BEAL's Residence.

11.    Based on my communication with FBI Special Agent Bomb Technician ("SABT") Greg Rabinovitz, who was part of the team that searched BEAL's Residence, I learned the following:

    a.      In the BEAL Residence, they found, among other things, the following items:

        i.      Two cardboard tube items;

        ii.      Batteries;

        iii.      A nine-volt battery connector;

        iv.      In total, approximately 130 pounds of explosives/precursors, including potassium perchlorate and potassium chlorate, approximately 80 of which was located in the garage;

        v.      Containers of black powder and numerous other unknown energetic powders (which were determined to be energetic based on field testing); and

        vi.      Two handguns and a shotgun, none of which requires registration under the National Firearms Registration and Transfer Record.

    b.      On May 16, 2018, an OCSD bomb technician inspected the two identical-looking items. Each consists of a hollow cardboard cylinder approximately 7.5 inches long and one inch in diameter. Protruding from one end of the cylinder is a 30-inch long fuse. The OCSD bomb technician then performed a "render-safe" procedure to expose the contents of one of the cardboard tubes.[3]

---

[3] Agents also found a third improvised tube-type device in an annex to the garage of the BEAL Residence ("Rocket Device"). That item was visibly capped on one end, wrapped in silver duct tape, and had leg wires from an electric initiator

Inside the cylinder was an off-white chalky powder.  He then performed a

presumptive field screening on the powder, which reacted violently when heat was

applied to it.  This behavior is consistent with energetic mixtures known to be used

in destructive devices (also known as IEDs and/or bombs).  Based on SABT

Rabinovitz's training, knowledge, and experience, the recovered items have the *, and not*

physical characteristics, composition, and construction of a destructive device.[4] *consistent*

*with that*

### D.    BEAL's Statements about the Pipe IEDs and Rocket Device *of a model*

*rocket.*

12.    Based on my communications with FBI SA Rafik Mattar, I learned

that on May 16, 2018, BEAL was interviewed and stated the following:

a.    When shown a photograph of the Rocket Device, BEAL

initially said he did not recognize it.  Later, he acknowledged that the Rocket

Device was a smoke detonator whose purpose was to release smoke during flight

so the rocket would stay visible.  He said he could not remember if he made the

Rocket Device or purchased and put duct tape on it.

b.    When shown photographs of the two pipe IEDs, BEAL initially

said he did not recognize them.  However, he later explained their exact location in

the pool house/garage where they were actually found.  BEAL also claimed that he

had not made any bombs or anything that would catch on or cause a fire.

c.    BEAL said he also built another device smaller than the two

pipe IEDs to assist with his neighbor's gopher problem.  The fuse for that device

was long enough such that he chatted with the neighbor while it burned down.

---

extending from one end of the tube with the other end wrapped in duct tape.  Bomb
technicians employed a "render-safe" procedure to open the item, and tested the
powder inside.  The powder inside was consistent with a smoke-generating powder
that burns.  This is consistent with statements made by BEAL during his interview
regarding use in rocketry.

[4] Final determination is pending analysis of an FBI Explosives Unit device
examiner.

**E.    BEAL Has Not Registered Any Firearms or Destructive Devices in the National Firearms Registration and Transfer Record**

13.     On or about May 16, 2018, I received from ATF Intelligence Specialist Thomas Chimileski Jr. the results of a query of the National Firearms Registration and Transfer Record ("NFRTR"), the central registry of all National Firearms Act ("NFA") firearms in the U.S. that are not in the possession or under the control of the U.S. Government.  Based on the totality of the evidence set forth in this affidavit, there is probable cause to believe that the devices described above require registration.  I have learned that there are no firearms or destructive devices registered to BEAL in the NFRTR.

**F.    BEAL's Arrest**

14.     On May 16, 2018, BEAL was arrested by the FBI based on probable cause to believe he had committed a violation of the Subject Offense and is currently in custody.

## V.    CONCLUSION

15.     For all the reasons described above, there is probable cause to believe that BEAL has committed a violation of the Subject Offense.


Evan Jesch, Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me
on May 17, 2018.


THE HONORABLE KAREN SCOTT
UNITED STATES MAGISTRATE JUDGE